UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| KYLE B. RICHARDS #641715, et al., | Case No. 2:20-cv-194 |
| Plaintiffs, | Hon. Paul L. Maloney U.S. District Judge |
| v. | |
| KRISTOPHER TASKILA, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

## I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment (ECF No. 48).

Plaintiff state prisoners Kyle Richards, Kenneth Pruitt, and Robert Kissee initiated this civil rights action pursuant to 42 U.S.C. § 1983 on July 15, 2020.[1] In

---

[1] Also pending before this Court are *Richards et al. v. Perttu*, W.D. Mich. Case No. 2:20-cv-76, filed by the same three plaintiffs, and *Richards v. Whitmer et al.*, W.D. Mich. Case No. 2:20-cv-122, filed by Richards. All three cases involve claims against Resident Unit Manager (RUM) Perttu. The defendants filed motions for summary judgment based on exhaustion in all three cases. On July 29, 2021, this Court denied the defendant's motion for summary judgment in *Richards et al. v. Perttu* because there was a genuine issue of material fact regarding whether the defendant thwarted Plaintiffs' efforts to exhaust. (W.D. Mich. Case No. 2:20-cv-76, ECF No. 105.) On August 31, 2021, the undersigned held a status conference in that case. (W.D. Mich. Case No. 2:20-cv-76, ECF No. 117.) Because the plaintiffs made allegations of thwarting in *Richards et al. v. Perttu*, W.D. Mich. Case No. 2:20-cv-76, and *Richards v. Whitmer et al.*, W.D. Mich. Case No. 2:20-cv-122, Perttu requested bench trials on exhaustion in both cases pursuant to *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015). At the time, Perttu had not filed a motion for summary judgment in this case, but

their verified complaint, Plaintiffs alleged that while they were confined at Baraga Correctional Facility (AMF) in Baraga, Michigan, four employees of the Michigan Department of Corrections (MDOC) and two employees of the Michigan State Police (MSP) violated their rights under various federal and international laws. Also in their verified complaint, Plaintiffs claimed that one Defendant, AMF Resident Unit Manager (RUM) Thomas Perttu, prevented them from filing grievances concerning their claims against him. On May 6, 2021, this Court dismissed all but Plaintiffs' Eighth Amendment claims that: (1) RUM Perttu sexually assaulted Plaintiffs, and (2) Defendants AMF Warden Taskila and RUM Neimi denied Plaintiffs medical care. Defendants move for summary judgment on the basis that Plaintiffs failed to exhaust their administrative remedies prior to filing suit.

For the foregoing reasons, the undersigned finds (1) that there is no genuine issue of material fact as to whether Plaintiffs exhausted their claim against Warden

---

indicated that he intended to, and requested a bench trial if Plaintiffs responded with allegations of thwarting. On September 13, 2021, Perrtu filed his motion for summary judgment based on exhaustion. (ECF No. 48.) The undersigned concludes that the Court should address the motion for summary judgment prior to conducting a bench trial on exhaustion. The aim of summary judgment is to determine whether a genuine issue of material fact exists. Fed. R. Civ. P. 56(a). However, the purpose of a bench trial on exhaustion is to determine whether a defendant has proven by a preponderance of the evidence that a plaintiff has failed to exhaust his administrative remedies. *See, e.g., Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *8 (E.D. Mich. Nov. 30, 2018), *report and recommendation adopted*, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019) (conducting bench trial on exhaustion after denying motion for summary judgment, and concluding "that the preponderance of the evidence supports a finding that Plaintiff did not file the Disputed Grievance . . . and that he, therefore, has not exhausted his administrative remedies"). Thus, the undersigned concludes that correct procedure is to address a defendant's motion for summary judgment on exhaustion first, and then proceed to a bench trial on the issue of exhaustion if a defendant's motion for summary judgment is denied.

Taskila and RUM Neimi, and Taskila and Neimi are entitled to summary judgment, and (2) that there is a genuine issue of material fact as to whether Plaintiffs were thwarted from exhausting their claim against RUM Perttu. Accordingly, the undersigned recommends that the Court grant Defendants' motion for summary judgment with regards to Warden Taskila and RUM Neimi and deny Defendants' motion for summary judgment with regards to RUM Perttu.

## II.     Factual Allegations

The facts underlying Plaintiffs' remaining claims were set forth in this Court's May 6, 2021 screening opinion:

> Plaintiffs . . . allege that, on April 16, 2020, Defendant Perttu approached Plaintiff Richards' door and informed him that he would be calling him out to talk, because Plaintiff needed to do what he was told. An hour later, Plaintiffs Richards and Pruitt were escorted to the 3-Unit phone room, where Defendant Perttu punched and beat them and then demanded oral sex. Defendant Perttu shoved his penis into Plaintiff Richards' mouth and engaged in penetration for 30 minutes. Perttu then punched Plaintiff Pruitt and orally raped him. Plaintiffs were handcuffed throughout.
> On April 24, 2020, all three Plaintiffs were called down to the Unit-3 conference room and locked into the phone room with Defendant Perttu. They were again in handcuffs. Perrtu attacked Plaintiff Richards, tearing off his clothing. Perttu then fondled Richards' genitals, complaining that Richards was not erect. Plaintiff Richards told Perttu that he was afraid and wanted to stop. Defendant Perttu persisted and, after some time, punched Richards, and then began fondling Plaintiff Pruitt. Pruitt resisted, prompting Perttu to punch him multiple times. Defendant Perttu then attacked Plaintiff Kissee, threatening to kill him.
> On May 20, 2020, the three Plaintiffs were called out a third time. Defendant Perttu forcefully pushed Plaintiff Richards' head into Perttu's genital area. Plaintiff Richards bit Perttu's penis. At that point, Defendant Perttu punched Plaintiff Richards until he passed out.
> Plaintiffs were once again called on June 1, 2020. On that occasion, Plaintiffs were stripped naked and beaten bloody.

3

> Defendant Perttu approached Plaintiffs' door on June 29, 2020, threatening to call Plaintiffs out again very soon and warning them to be ready. Plaintiffs fear future assaults. . . .
>
> Plaintiffs allege that, on April 16, 2020, and May 20, 2020, Defendants Neimi and Taskila ignored requests from Plaintiffs Richards, Pruitt, and Kissee for medical attention. On April 16, Defendant Neimi instructed medical staff not to provide medical assistance. During rounds, Defendant Taskila told all three Plaintiffs that they should drop the issue and that no medical services would be allowed, despite the fact that two Plaintiffs had apparent and significant injuries: Plaintiff Richards suffered a battered face, broken nose, and sprained arm; and Plaintiff Pruitt incurred a sprained wrist, sprained neck, bruising to his ribs and face, and internal bleeding. On May 20, Plaintiffs Pruitt and Kissee again stopped Defendant Taskila during rounds, requesting emergency medical treatment. Again, Taskila told Plaintiffs to drop the issue and ignored the request for medical care. Plaintiff Pruitt had internal bleeding, severe lacerations to his face and chest, and bruising across his body. Plaintiff Kissee was coughing up blood. Plaintiffs allege that they filed multiple health care requests but received no treatment.

(ECF No. 27, PageID.142-145.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

5

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 648 (2016).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem informally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive

also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. Id. at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing

7

grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

## V. Analysis

As noted in the Introduction, two questions are presented by Defendants' motion for summary judgment and Plaintiffs' brief in response: (1) whether there is a genuine issue of fact as to Plaintiffs' use of the grievance process to exhaust their claims against Warden Taskila and RUM Neimi, and (2) whether there is a genuine issue of fact as to whether prison officials thwarted Richard's attempt to exhaust his relevant grievance.

### a. Exhaustion as to Taskila and Neimi

Importantly, Plaintiffs do not argue that they were thwarted from filing grievances against Warden Taskila and RUM Neimi — they assert that Richards exhausted the claim by filing grievance AMF 20-04-660-27c, which he appealed through Step III of the grievance process. (ECF No. 53, PageID.405.) The relevant portion of Richards's Step III Grievance Report is shown below.

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/6/2020 | AMF-20-04-0657-28B | 28B | 2 | 4/14/2020 | ☐ | ☐ | ☐ | ☑ | ☑ | 9/1/2020 |
| 7/6/2020 | AMF-20-04-0641-28B | 28B | 2 | 4/9/2020 | ☐ | ☐ | ☐ | ☑ | ☑ | 9/1/2020 |
| 7/6/2020 | AMF-20-04-0660-27C | 27C | 2 | 4/14/2020 | ☐ | ☐ | ☐ | ☑ | ☑ | 9/1/2020 |

(MDOC Prisoner Step III Grievance Report, 1/1/2015 to Present; Prisoner #: 641715, Last Name: Richards, First Name: Kyle)

(ECF No. 49-3, PageID.276.)

The grievance procedure outlined in P.D. 03.02.130 is not completed for exhaustion purposes until the prisoner receives the Step III response. *Ross v. Duby*, No. 1:09-CV-531, 2010 WL 3732234 (W.D. Mich. Sept. 17, 2010) (determining that the plaintiff had not exhausted his claim because the response to his Step III grievance was issued after the complaint was filed). But Richards's Step III Grievance Report reflects that he did not file his Step III appeal until July 6, 2020, only nine days before Plaintiffs filed their complaint in this case. More importantly, it reflects that the Step III response to AMF 20-04-660-27c was not mailed back to Richards until September 1, 2020, months after Plaintiffs filed their complaint. Because exhaustion is a prerequisite to filing a suit, Plaintiffs cannot look to AMF 20-04-660-27c to exhaust any claims in this case, regardless of its contents. *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (explaining that a plaintiff cannot exhaust administrative remedies "during the pendency of the action").

9

Because Plaintiffs did not allege, let alone provide evidence, that Richards in fact received the Step III response to AMF 20-04-660-27c before they filed their complaint, there are no genuine issues of material fact with regards to whether Plaintiffs exhausted their claim against Warden Taskila and RUM Neimi, and Defendants are entitled to summary judgment on that claim.

### b. Exhaustion as to Perttu

The Supreme Court held that the grievance process will be considered unavailable to prisoners whenever prison officials thwart the prisoners' attempts to exhaust "through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60. The Eastern District of Michigan has explained that, in cases where a plaintiff claims that his efforts to exhaust were thwarted, the defendant must first show that the grievance process was generally available to the plaintiff. *Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *8 (E.D. Mich. Nov. 30, 2018), *report and recommendation adopted*, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019). Then, once this showing has been made, the burden of production shifts to the defendant to produce evidence showing that he was thwarted in his attempts to use the grievance procedures. *Id.* The District Court for the Eastern District of Michigan outlined the process as follows:

> [O]nce a defendant carries the burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward, with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

10

*Id.* at *6 (internal quotation marks and citation omitted).

In their verified complaint, Plaintiffs allege that on five different dates in May and June of 2020, Perrtu approached one or more of their cells and either destroyed grievances they were attempting to submit in front of them or threatened to harm them if they continued submitting grievances. (ECF No. 1, PageID.10-11.) For example, on May 25, 2020, Perttu allegedly punched Richards and ripped up his grievances, and then told Pruitt he would do the same to him as he had to Richards if Pruitt kept filing grievances. (*Id.*, PageID.10.)

Despite the allegations of thwarting made in Plaintiffs' complaint, Defendants do not address thwarting in their brief in support of summary judgment. Instead, Defendants simply submitted an affidavit by AMF Security Inspector Craig Cummings (ECF No. 49-7), and the applicable grievance policy (ECF No. 49-6). Cummings states that the Administrative Investigations Management database, which tracks PREA grievances filed at AMF, did not contain any PREA grievances that Plaintiffs filed against RUM Perrtu. (ECF No. 49-6, PageID.361.)

While logic dictates that it would be difficult if not impossible for RUM Perttu to single-handedly identify and intercept every single PREA grievance the Plaintiffs claimed to have written from May of 2020 to June of 2020, the Court cannot base its decisions on speculation or arguments a defendant has failed to make.

Accordingly, the undersigned concludes that there is a genuine issue of fact as to whether Plaintiffs were thwarted from being able to properly exhaust their claim against RUM Perttu.

## VI. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 48) as to Plaintiff's claim against Warden Taskila and RUM Neimi and deny Defendants' motion as to RUM Perrtu.

If the Court accepts these recommendations, only Plaintiffs' Eighth Amendment sexual abuse claim against RUM Perttu will remain. Furthermore, if the Court adopts these recommendations, the undersigned will proceed with a bench trial on the issue of exhaustion. At the bench trial, the undersigned will determine whether Perttu has proven by a preponderance of the evidence that Richards failed to exhaust his administrative remedies.

Dated:   December 30, 2021                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).